**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| HUIMIN SONG, ET AL., | ) | Case No. 5:11-CV-04450-EJD |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANTS'** |
| v. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| COUNTY OF SANTA CLARA, ET AL., | ) | |
| | ) | |
| | ) | **[Re: Docket Item No. 29]** |
| Defendants. | ) | |
| | ) | |

In this employment-related action brought by Plaintiffs Huimin Song ("Song") and Andy Xie ("Xie") (collectively "Plaintiffs"), presently before the Court is Defendants County of Santa Clara ("County"), David Manson ("Manson"), Sonia Valencia ("Valencia"), Ann LaBorde ("Laborde"), and Terry Stavang's ("Stavang") (collectively "Defendants") Motion for Summary Judgment. See Docket Item No. 29. Having fully reviewed the parties' papers, the Court will GRANT in part and DENY in part Defendants' motion for the reasons stated below.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are U.S. Permanent Residents, born in China, who work as ultrasonographers in Santa Clara Valley Medical Center's ("SCVMC") Echo-Cardiology Laboratory. Amended Complaint ("AC"), Docket Item No. 8 ¶¶ 7, 33, 37, 51. Song began working at SCVMC as an

ultrasonographer in June 2001.  Id. ¶ 14.  Xie was hired as a full-time ultrasonographer on January

27, 2003.  Id. ¶ 42.  Defendants both hold three professional certifications: two in cardiac

sonography and one in vascular sonography. [1]  Id. ¶¶ 19, 45.  As ultrasonographers, Defendants were

members of the Service Employees International Union ("Union") 715 and their employment was

governed by a Memorandum of Agreement ("MOA") signed between the Union and the County on

June 19, 2006.  Pineda Decl. ¶ 4, Docket Item No. 32.

### 1. Pay Differentials

Plaintiffs claim that during their wage and benefit negotiations, Defendant Stavang, the

supervisor for the Radiology Department, promised them additional salary as a percentage of their

base pay for all the professional certifications that each held, whether or not they were used in their

work.  Dkt. No. 8 ¶¶ 20-21, 47.  Around the end of 2003 or the beginning of 2004, Song discovered

that other ultrasonographers received higher additional pay amounts than Plaintiffs, even though

Plaintiffs had more certifications.  Id. ¶¶ 26, 28-30; Winchester Decl., Ex. A, at 42:10-22, Docket

Item No. 31-1; Winchester Decl., Ex. B, at 75:4-9, Docket Item No. 31-2.  In 2003 or 2004,

Plaintiffs discussed this discrepancy with their supervisor, Defendant Laborde, who told them they

were not paid for their vascular certification ("RVT") because it was not applicable to their work in

the cardiology department.  Dkt. No. 8 ¶¶ 31, 50; Dkt. No. 31-1 at 43:22-44:24; Dkt. No. 31-2 at

76:1-13.  Laborde explained that other ultrasonographers were paid for unused certifications

because they had used them in the past.  Dkt. No. 8 ¶¶ 29-31.

Plaintiffs had been receiving 9% additional pay for their certifications, but in October 2008

they discovered that they should have received 14%, a difference of 5%.  Dkt. No. 8 ¶¶ 29, 48.

Song raised the issue in 2004 or 2005 with Dr. Hollister Brewster, head of SCVMC's Cardiology

department, with the County's Human Resources Department, and continued to raise it with

Laborde.  Id. ¶ 32; Dkt. No. 31-1 at 91:11-92:16.

---

[1] Plaintiff Xie had two cardiac ultrasound certifications when he was hired in January 2003.  He
received his third certification – Registered Vascular Specialist, which is equivalent to Registered
Vascular Technologist – in March 2003.  Dkt. No. 8 ¶ 45.

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    In March 2008, Plaintiffs were reclassified from Ultrasonographer II to Ultrasonographer

2    IIB.  They discovered that they were the only two ultrasonographers classified under the hospital

3    standard ("Distinguishing Characteristics"), while all other ultrasonographers were classified under

4    the union standard ("Employment Standards"), which qualified all other ultrasonographers to

5    receive pay for unused certifications.  Dkt. No. 8 ¶¶ 34, 37, 53-56.  In October 2008, the County

6    began paying Song and Xie 14% additional pay for their certifications.  Id. ¶¶ 35, 41, 58.  On

7    October 24, 2008,[2] Plaintiffs filed grievances with their union, requesting back pay of the 5%

8    difference from the start of their employment, when they were paid 9% additional pay, through

9    October 2008, when they were paid 14% additional pay.  Id. ¶ 39, 59.  In November 2008,

10   Plaintiffs again raised the issue of additional pay with Laborde, who denied their request to be back

11   paid the 5% difference.  Dkt. No. 31-1 at 112:7-113:19.  Plaintiffs allege that they did not learn the

12   full implication of the County's payment inconsistencies until June 2011.  Song Decl. ¶ 2, Docket

13   Item No. 39; Xie Decl. ¶ 2, Docket Item No. 41.

14       **2. Callback Pay**

15   Pursuant to the MOA between the County and the Union, Plaintiffs were paid one-half of

16   their regular base rate for each hour of on-call duty and were not eligible for four-hour minimum

17   overtime.[3]  Dkt. No. 32 ¶ 4.  To record callback time, Plaintiffs swiped their badges in and out for

18   each callback and were paid for exact hours worked.  Dkt. No. 8 ¶ 66, 71.  In 2009, Plaintiffs' lab

19   was transferred to a new department with a new timekeeper and new payroll department.  Id. ¶ 61.

20   In February 2009, Valencia, the timekeeper for the department, and Laborde announced a new

21   policy regarding callback pay.  Id. ¶ 61.  Plaintiffs were told that they would be paid a minimum of

22   four hours for each time they were called back, even if the task for which they were called back

23   took less than four hours to complete.  Id.; Dkt. No. 41 ¶¶ 43-44.  In April 2009, Plaintiffs were

24   

25   [2] In their Declarations, Plaintiffs clarify that on October 24, 2008, they presented information to the
Union and the Union grievance was filed on December 15, 2008.  Song Decl. ¶ 27, Docket Item

26   No. 39; Xie Decl. ¶ 29, Docket Item No. 41.

27   [3] The MOA defines on-call duty as "the requirement to remain immediately available to report for
duty to perform an essential service when assigned by the appointing authority, subject to approval

28   by the County Executive."  Dkt. No. 32 ¶ 4.

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

trained by Valencia to enter a new code when they reported for callback service, which would automatically record four hours of callback time, negating the need to swipe their badges when they entered and left the hospital because their pay was no longer based on the exact hours of callback work. Id. ¶ 65, 72. Plaintiffs used this new code each time they were called back to the hospital and Valencia confirmed the new policy several times. Dkt. No. 41 ¶¶ 45, 51-59.

In October 2010, the County stopped paying Plaintiffs the minimum four hours of callback time. Dkt. No. 8 ¶ 67, 73. Valencia informed Plaintiffs that she had incorrectly paid them for four hours of callback time and that the County would take money back from each future paycheck for the erroneous callback pay. Id. ¶ 73. On January 18, 2011, each Plaintiff received a letter notifying them of overpayments. Id. ¶¶ 74-75. Song was notified that she had been overpaid $68,383.74 for callback time; Xie was notified that he had been overpaid $45,197.23 for callback time. Id. Plaintiffs were notified that pursuant to Section 7.6(c) of the MOA their overpayment amount would be deducted over the same number of pay periods during which the error occurred. Section 7.6(c) provides: "Overpayment Errors: when a net one hundred dollars or more to be repaid in the same amount and within the same number of pay periods in which the error occurred." Pineda Decl., Ex. A, at 1, Docket Item No. 32-1.

In January or February 2011, Xie filed a grievance with the Union for an incorrect amount of overpayment. Dkt. No. 8 ¶ 75. Song filed a grievance in February or March 2011.[4] Id. ¶ 78. Plaintiffs claim that because they did not clock in and out at the time they arrived and left for their callback work after Valencia announced the new policy, the County could not have correctly calculated the amount of overpayment. Plaintiffs have records of the amount of time worked during this period; their calculation is much higher than the County's. In April 2011, the County began deducting pay from Plaintiffs' paychecks. Dkt. No. 8 ¶¶ 75-77; Dkt. No. 39 ¶ 59; Dkt. No. 41 ¶ 61. In the pay period of April 8 to May 1, 2011, the County deducted $1,628.18 from Plaintiff Song's paycheck. Id. ¶ 83.

---

[4] Plaintiff Xie's Declaration states that the grievance was filed on February 15, 2011, while the AC states it was filed in January 2011. Dkt. No. 41 ¶ 60. Plaintiff Song's Declaration states that the grievance was filed on February 15, 2011, while the AC states it was filed on March 25, 2011. Dkt. No. 39 ¶ 58.

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    On April 11, 2011, Plaintiffs met with the County's Labor Relations Representative to

2    discuss the overpayment. Dkt. No. 8 ¶ 79. In the meeting, the representative told Plaintiffs that his

3    authority was to set the amount to deduct from each pay period and he provided Plaintiffs with

4    documentation showing how the County calculated the alleged overpayment. Id. ¶¶ 79-80. On

5    May 16, 2011, Plaintiffs received a settlement agreement in which the County offered to take out a

6    smaller amount per pay period over a longer period of time, without changing the calculated

7    overpayment. Dkt. No. 39 ¶ 88; Dkt. No. 41 ¶ 91. The agreement included clauses requiring

8    Plaintiffs to withdraw their grievances, drop all claims against County, and refrain from filing

9    lawsuits. Dkt. No. 8 ¶ 86; Dkt. No. 39 ¶ 89; Dkt. No. 41 ¶ 92. Plaintiffs did not sign the

10   agreement. Dkt. No. 8 ¶¶ 89-91. On January 25, 2012, Plaintiffs withdrew their union grievances.

11   Dkt. No. 32 ¶¶ 7-8. In December 2012, Plaintiffs were put on administrative leave for pending

12   investigations. Dkt. No. 39 ¶ 101; Dkt. No. 41 ¶ 103.

13   **B. Procedural History**

14   Plaintiffs filed their Complaint on September 7, 2011 and their Amended Complaint

15   ("AC") on December 19, 2011. See Docket Item Nos. 1, 8. The AC contains the following nine

16   causes of action: (1) violation of 42 U.S.C. §1983 (violation of the Fifth and Fourteenth

17   Amendments); (2) violation of 42 U.S.C. §1983 (violation of the First and Fourteenth Amendments

18   through retaliation); (3) negligent misrepresentation; (4) negligent hiring, training, and retention;

19   (5) intentional infliction of emotional distress; (6) nonpayment of wages; (7) supervisor liability;

20   (8) public entity liability for failure to perform mandatory duties; and (9) common count services

21   had and received.

22   On June 24, 2013, Defendants filed this Motion for Summary Judgment, which is presently

23   before the Court. Pursuant to Civil L.R. 7-1(b), the Court took the motion under submission

24   without oral argument.

25                                    **II. LEGAL STANDARD**

26   A motion for summary judgment should be granted if "there is no genuine dispute as to any

27   material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

28
                                                      5

Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment.  See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Instead, the non-moving party must come forward with admissible evidence to satisfy the burden.  Fed. R. Civ. P. 56(c); see Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991).  Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

### III. DISCUSSION

Defendants posit a number of reasons that this Court should adjudicate summarily on the claims including that claims are time-barred, that Plaintiffs have failed to establish certain causes of action, and that Defendants are immune from liability.  Furthermore, Defendants contend that Manson is entitled to summary judgment on all causes of action, Valencia is entitled to summary

6

United States District Court
For the Northern District of California

1    judgment on the Third Cause of Action, and Stavang is entitled to summary judgment on the

2    Second Cause of Action.

3    **A. Statutes of Limitations**

4        Defendants argue that Plaintiffs' First, Third, Fourth, Fifth, Seventh and Ninth Causes of

5    Action are time-barred by the applicable statute of limitations.  Defendants contend that claims

6    brought under 42 U.S.C. §1983 have a two-year statute of limitations in California (First and

7    Fourth Causes of Action); negligent misrepresentation is time-barred after three years (Third Cause

8    of Action); claims for negligent hiring, training and retention must be filed within two years

9    (Fourth Cause of Action if brought as a negligence claim); intentional infliction of emotional

10   distress has a two-year limit (Fifth Cause of Action); claims for supervisory liability accrue after

11   two years (Seventh Cause of Action); and claims for common count are time-barred after four

12   years for written contracts and two years for oral agreements (Ninth Cause of Action).  As for

13   unpaid wages related to professional certifications, Defendants argue that Plaintiffs knew they were

14   not paid for the RVT certificates in late 2003 or early 2004, and complained about the issue to their

15   managers and the HR department as early as 2003 and as late as 2005, at the latest over five years

16   before the case was filed.  As for callback pay, Defendants argue that Plaintiffs were trained in

17   April 2009, over two years before the suit was filed.

18       Plaintiffs do not refute the applicable statute of limitation for each claim.  However, they do

19   contend that their claims are timely filed.  First, they argue that the statute of limitations for each

20   claim arising from unpaid differentials renewed at each pay period.  As such, each incomplete

21   paycheck they received would constitute a separate violation leading to a new cause of action and

22   accrual of the limitations period.  Second, they argue that the statute of limitations may be tolled

23   for the time period that they pursued union grievance procedures.  Third, they argue that they did

24   not discover sufficient facts to give rise to a lawsuit until after they had conferred with legal

25   counsel and union representatives in June or July 2011.

26       A statute of limitations begins to run when the cause of action accrues, which is generally

27   when the wrongful act is committed and liability arises.  <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35

28

Cal. 4th 798, 806-09 (2005).  However, in California, accrual may be delayed until a plaintiff

discovers the wrongful act or should have known that his or her injury was caused by tortious

wrongdoing.  Id.; cited with approval Bone v. Los Angeles, 471 Fed. Appx. 620 (9th Cir. 2012).

Furthermore, a statute of limitations may be held in abeyance by either the doctrine of equitable

tolling or the doctrine of equitable estoppel.  Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116,

1120 (9th Cir. 2006).  Equitable tolling "focuses on whether there was excusable delay by the

plaintiff and may be applied if, despite all due diligence, a plaintiff is unable to obtain vital

information bearing on the existence of his claim."  Id. (internal quotations omitted).

All of Plaintiffs' claims arising from the unpaid 5% are time-barred.  Plaintiffs contend that

they received incomplete paychecks from the time they started working at SCVMC through

October 2008, when they began receiving 14% additional pay.  Plaintiffs argue that their claims for

unpaid differentials were renewed at each pay period and, as such, claims for pay differentials are

not barred by a two-year statute of limitations.  However, because the last incomplete paycheck

was well over two years before the Complaint was filed, Plaintiffs' First, Fourth, Fifth, Seventh,

and Ninth Causes of Action relating to the 5% differential pay are time-barred and the Court need

not analyze whether their claims were renewed at each pay period.

The Third Cause of Action for Negligent Misrepresentation is subject to the same statute of

limitations as fraud claims, which is three years.  Cal. Civ. Proc. § 338(d).  Plaintiffs bring this

claim against Stavang for promises that Plaintiffs would be paid for all their certifications, which

were made during the process of negotiation for wages and benefits in 2001.  Dkt. No. 8 ¶¶ 121-

127.  The AC notes that Laborde made a false statement concerning pay differentials in a meeting

with the Plaintiffs in 2003 or 2004, but does not address Laborde's statement in the claim for

negligent misrepresentation.  Id. ¶¶ 29-31, 50.  Plaintiffs do not dispute that the statute of

limitations has run for alleged negligent misrepresentations that were made in 2001 and discovered

by 2003 or 2004.  Instead, Plaintiffs contend that the statute of limitations was tolled while they

pursued intra-union procedures.  However, by the time Plaintiffs had filed their union grievances –

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  October or December 2008[5] – the three-year statute of limitations had run for actions that occurred

2  in 2001 (Stavang's statement) and 2004 (Laborde's statement).  Furthermore, Plaintiffs knew, or at

3  least suspected, they were not being paid the full differential by 2004, so a union grievance filed

4  four years later cannot toll the statute of limitations.

5            In their Opposition, Plaintiffs allege that Laborde made the same misrepresentation during a

6  meeting in November 2008, which was not discussed in the AC.[6]  Pls.' Reply at 6, Docket Item

7  No. 38.  However, a discussion about whether a claim for the 2008 comment is timely is

8  unnecessary because Plaintiffs do not show that a statute of limitations that already accrued for a

9  negligent misrepresentation made in 2001 or 2004 can be overcome by a repetition of the same

10 misrepresentation, especially since Plaintiffs admit they already knew or suspected the statement

11 was false in 2004.   As such, Plaintiffs' Third Cause of Action is time-barred.

12           The Ninth Cause of Action has a four-year statute of limitation if based on a written

13 contract, and two year if based on an oral agreement.  This claim, as based on the alleged

14 misrepresentation made by Stavang in 2001 or Laborde in 2004 is time-barred because the action

15 was filed long after the four or two-year statute of limitations ran for each incident.

16           Plaintiffs last argument, presented in their Opposition but not the AC, is that they did not

17 know the true nature of the discrepancy in their certification pay until 2011, when they discovered

18 (1) exactly how much they should have been paid, (2) exactly how much each of their three

19 coworkers were paid, (3) exactly how many certificates each of their coworkers held, and (4) how

20 other sonographers were paid differently.  Dkt. No. 38 at 1; Dkt. No. 39 ¶ 1, 33-35; Dkt. No. 41 ¶

21 1, 33-37.  As such, they argue, their claims did not accrue until 2011.  The Court finds this

22 argument unpersuasive.  As discussed above, a statute of limitations begins to run once a plaintiff

23 _____

[5] See supra note 2.

24 [6] Plaintiffs' citations to specific paragraphs in their Declarations do not support the proposition that
25 there was a meeting with Defendant Laborde in 2008 or that any misstatement was reiterated.
   Other paragraphs state: "[a]fter seeing those two standards, I was deeply troubled and puzzled
26 about the footnotes pay.  I brought this issue again to my manager Ms. LaBorde, but she gave me
   the same answer that I didn't get paid for RVT because I did not use it."  Dkt. No. 39 ¶ 24; Dkt.
27 No. 41 ¶ 26.  However, this statement does not identify the date when the meeting was held.  In her
   deposition, Song testified that in November 2008, Plaintiffs met with Laborde to ask for back pay
28 of the 5% differential and were told they would not be paid back.  Dkt. No. 31-1 at 112:7-113:19.

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

1   discovers, or has reason to suspect, a factual basis for the elements of a cause of action. <u>Fox</u>, 35

2   Cal. 4th at 807. Plaintiffs have conceded that by 2004, if not earlier, they had reason to suspect a

3   wrongdoing in regards to pay differentials and cannot now argue that they did not discover the

4   injury until 2011.

5        In sum, the First, Third, Fourth, Fifth, Seventh, and Ninth Causes of Action for unpaid

6   wages related to professional certificates are all time-barred and summary judgment is granted in

7   favor of Defendants on these claims.

8   **B. Failure to Establish Second Cause of Action**

9        Plaintiffs' Second Cause of Action for violation of free speech is alleged against

10   Defendants Laborde, Valencia, Stavang, and Manson. However, Plaintiffs have failed to establish

11   this cause of action, as they have not shown how any of these Defendants retaliated against them or

12   that they were involved in collecting wages from Plaintiffs. In the AC Plaintiffs allege that the

13   County retaliated against them by taking an excessively large amount per pay period because

14   Plaintiffs refused to sign the settlement agreement presented by the County. Even assuming that

15   the claim is being made against the County in addition to the individual Defendants, Plaintiffs fail

16   to establish their Second Cause of Action. The County began to deduct the alleged overpayment

17   from Plaintiffs' pay in the pay period of April 18 through May 1, 2011, which is before Plaintiffs

18   were given the settlement agreement on May 16, 2011. Plaintiffs have not shown any facts that

19   would establish the County or any individual defendant took any adverse employment action

20   against them for refusing to sign the agreement.

21   **C. Immunity (Third and Ninth Causes of Action)**

22        Even if the Third and Ninth Causes of Action were not time-barred, Defendants are

23   immune from liability. Public entities are not liable for an injury caused by a negligent or

24   intentional misrepresentation made by an employee of the public entity. Cal. Govt. Code § 818.8.

25   This immunity applies in situations when the misrepresentation is regarding the terms of

26   employment. <u>See</u> <u>Burden v. County of Santa Clara</u>, 81 Cal. App. 4th 244, 251 (2000)

27   ("[employee's] misrepresentation claims regarding his recruitment and hiring . . . clearly arose out

28

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   of a business transaction between [employee] and the County. . . . The employment of [employee]

2   by the County involved a sufficient financial interest to trigger the immunity of section 818.8.").

3   Plaintiffs' injuries arose in the context of negotiating their terms of employment.  As such, the

4   County is immune from liability on the Third Cause of Action and summary judgment is granted.

5   Additionally, a public employee is immune from injury caused by a misrepresentation

6   unless the employee is guilty of fraud, corruption, or malice.  Cal. Gov't Code § 822.2.  Fraud,

7   corruption, and actual malice have been defined by the California Court of Appeal as "a conscious

8   intent to deceive, vex, annoy or harm the injured party."  Masters v. San Bernadino County Emps.

9   Retirement Ass'n, 32 Cal. App. 4th 30, 42 (1995).  In order to overcome immunity, Plaintiff must

10  plead specific facts to demonstrate fraud, corruption, or malice.  Plaintiffs state that Laborde

11  "confused Plaintiffs" and "took advantage" of them, but Plaintiffs fail to point out evidence of

12  actual fraud, corruption, or malice.  Therefore, the individual Defendants are immune from liability

13  for the Third Cause of Action and summary judgment is granted in their favor.

14  The Ninth Cause of Action, pled against the County only, is based on the allegation of

15  Stavang's negligent misrepresentation concerning pay for certifications.  As discussed above, the

16  County is immune from liability caused by the alleged misrepresentation, so the County cannot be

17  held liable for the common count claim and summary judgment is granted in favor of Defendants.

18  **D. Negligent Hiring, Supervision, and Retention (Fourth Cause of Action)**

19  As discussed above, any claims arising from the unpaid wages related to professional

20  certifications are time-barred.  Therefore, the Court only examines the Fourth Cause of Action for

21  negligent hiring, supervision, and retention as it pertains to callback pay.

22  If this claim is based on a violation of 42 U.S.C. § 1983, Plaintiffs must identify a policy or

23  custom of the County that caused their injury and demonstrate that the County was the moving

24  force behind the injury.  See Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658,

25  694 (1978); Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397 (1997).  A

26  constitutional violation can also arise from hiring, training, or supervision which is sufficiently

27  inadequate to constitute deliberate indifference.  Davis v. City of Ellensburg, 869 F.2d 1230, 1235

28

11

1   (9th Cir. 1989).  To prevail on such a claim, a plaintiff must show that: (1) the municipality's

2   hiring training, or supervision policies were inadequate; (2) the municipality was deliberately

3   indifferent in adopting those policies; and (3) the policies directly caused the constitutional injury.

4   See Id.; Canton v. Harris, 489 U.S. 378, 388-89 (1989).

5        Defendants argue, and this Court agrees, that Plaintiffs fail to identify any hiring, training,

6   supervision, or retention policy that caused them to suffer a constitutional violation, nor do they

7   present evidence that Defendants were deliberately indifferent.  Plaintiffs have not shown any

8   knowledge on the part of the County that its employees could not be trusted to act properly without

9   being supervised.  As such, Plaintiffs have failed to establish their Fourth Cause of Action and

10  summary judgment is granted in favor of Defendants.

11  **E. Intentional Infliction of Emotional Distress (Fifth Cause of Action)**

12       A cause for intentional infliction of emotional distress exists where there is: (1) extreme and

13  outrageous conduct with the intent of causing, or the reckless disregard of the possibility of

14  causing, emotional distress; (2) severe or extreme emotional distress; and (3) actual and proximate

15  cause of the injury was defendant's outrageous conduct.  Hughes v. Pair, 46 Cal. 4th 1035, 1050

16  (2009).  Conduct is outrageous when it is "so extreme as to exceed all bounds of that usually

17  tolerated in a civilized community."  Id. at 1051 (citation omitted).  In the employment context, a

18  plaintiff must show that the defendant's conduct went "beyond what is to be expected from an

19  employment relationship."  Jersey v. John Muir Medical Center, 97 Cal. App. 4th 814, 830 (2002).

20       Defendants argue that Plaintiffs do not show any facts demonstrating that there was

21  extreme or outrageous conduct on the part of any defendant.  Plaintiffs claim that Laborde and

22  Valencia took Plaintiffs' wages in violation of the public policy principle articulated by Plaintiffs

23  that wages are due and payable when earned.

24       Plaintiffs do not provide any specific evidence to support allegations of extreme and

25  outrageous conduct on the part of Defendants.  As discussed previously, the Court finds no

26  evidence for retaliation and Plaintiffs do not show that any individual defendant "took" their

27  wages.  Therefore, summary judgment is granted in favor of Defendants.

28

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

**F. Labor Code Violations (Sixth Cause of Action)**

Plaintiffs' Sixth Cause of Action is based on violations of California Labor Code §§ 201, 202, 206, 218, and 221.  Plaintiffs do not dispute Defendants' argument that Plaintiffs are legally prohibited from suing the County for violations of Labor Code §§ 201, 202, 206, and 218 because these sections do not apply to payment of wages to employees directly employed by a county.  See Cal. Lab. Code § 220(b).

Defendants assert that Section 221, which prohibits employers from collecting any part of wages already paid to an employee, does not prohibit contractual agreements allowing an employer to seek reimbursement of wrongfully paid wages and that the MOA between the County and the Union expressly gives the County the right to collect overpaid wages, as long as they are repaid in the same amount and in the same number of pay periods.  Dkt. No. 32-1.  Plaintiffs assert that Section 219 of the Labor Code prohibits waiver of Section 221 rights, but Defendants counter that Section 219 does not apply to employees directly employed by the County (per § 220(b)) and that Section 224 allows the deduction of wages when expressly authorized in writing by the employee.

Section 224 allows for the withholding of pay "when the employer is required or empowered so to do by state or federal law or when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute . . . ."  Cal. Lab. Code § 224.  The California Court of Appeal has noted that, as a policy matter, "the Legislature has recognized the employee's dependence on wages for the necessities of life and has, consequently, disapproved of unanticipated or unpredictable deductions because they impose a special hardship on employees." Hudgins v. Neiman Marcus Group, Inc., 34 Cal. App. 4th 1109, 1119 (1995).  Even so, that court concluded that there is nothing unlawful in a contractual agreement allowing an employer to make deductions in certain situations.  See City of Oakland v. Hassey, 163 Cal. App. 4th 1477, 1490 (2008) (approving contractual agreement that allowed employer to deduct training costs from wages if an employee leaves the job within a certain amount of time).  Relying on this reasoning,

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

1    this Court finds that there is nothing unlawful about the recoupment of overpaid wages in the

2    manner previously agreed upon in a written MOU between the employer and employee's union.

3    Therefore, Defendants are entitled to summary judgment in their favor on the Sixth Cause of

4    Action.

5    **G. Supervisory Liability (Seventh Cause of Action)**

6            As discussed above, any claims arising from the unpaid wages related to professional

7    certificates are time-barred.  Therefore, the Court only examines the Seventh Cause of Action as it

8    pertains to claims arising from the callback policy.

9            Plaintiffs' Seventh Cause of Action for supervisory liability is alleged against Laborde and

10   the County.  Under 42 U.S.C. § 1983, supervisory officials are not liable for actions of

11   subordinates on any theory of vicarious liability.  Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir.

12   1989).  A supervisor may be liable if there is either (1) personal involvement in the constitutional

13   deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and

14   the constitutional violation.  Id. at 646.

15           Plaintiffs assert that Laborde knew or should have known of Valencia's wrongful conduct

16   when Valencia announced the new callback procedure.  Plaintiffs, however, do not contend that

17   Laborde herself was involved in the creation of the callback procedure or that she engaged in

18   wrongful conduct that led to a violation.

19           As for the County's liability under Section 1983, Plaintiffs must identify a policy or custom

20   of the County that caused their injury and demonstrate that the County was the moving force

21   behind the injury.  See Monell, 436 U.S. at 694; see also Bd. of County Com'rs, 520 U.S. 397.

22   Plaintiffs do not identify an official policy or custom that would render the County liable.

23   Therefore, Plaintiffs have not established their Seventh Cause of Action against either Laborde or

24   the County, so summary judgment will be granted.

25   **H. Mandatory Duty (Eighth Cause of Action)**

26           Plaintiffs' Eighth Cause of Action alleges that the County failed to perform mandatory

27   duties imposed by Labor Code §§ 206(a) and 221.  Plaintiffs do not oppose Defendants' argument

28

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

that Labor Code § 206 does not apply to county employees.  Defendants further assert that Labor Code § 221 does not create a mandatory duty.

Government liability for failure to perform a mandatory duty arises from Government Code § 815.6, which states: "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  The Court has found that the agreement in the MOU is not unlawful and that County did not violate Labor Code §221.  As such, the Court need not discuss whether the County is liable under Government Code § 815.6, because there is no underlying violation.  The Court grants judgment in favor of Defendants on the Eighth Cause of Action.

### IV. CONCLUSION

Plaintiffs' First, Third, Fourth, Fifth, Seventh, and Ninth Causes of Action for unpaid wages related to claims arising from pay differentials based on their professional certifications are time-barred.  Plaintiffs cannot establish the Second Cause of Action for retaliation or a violation of their right to free speech, as well as the Fourth, Fifth, and Seventh Causes of Action as they relate to the callback pay policy.  Defendants are immune from liability on Plaintiffs' Third and Ninth Causes of Action and they are entitled to summary judgment in their favor on the Sixth and Eighth Cause of Action.  As for Plaintiffs' First Cause of Action as it relates to overtime pay, summary judgment will not be granted, as Defendants do not address this issue.  Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED**

Dated: November 25, 2013

EDWARD J. DAVILA
United States District Judge

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California