UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HUIMIN SONG AND ANDY XIE<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA; SANTA CLARA VALLEY MEDICAL CENTER; DAVID MANSON; SONIA VALENCIA; ANN LABORDE; TERRY STAVANG; and Does 1 through 50<br><br>Defendants. | Case No. 5:11-CV-04450-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' FIRST CAUSE OF ACTION**<br><br>**[Re: Docket Item No. 62]** |

## I.  INTRODUCTION

In this employment-related action brought by Plaintiffs Huimin Song ("Song") and Andy Xie ("Xie") (collectively "Plaintiffs"), presently before the Court is Defendants County of Santa Clara ("County"), David Manson ("Manson"), Sonia Valencia ("Valencia"), Ann Laborde ("Laborde"), and Terry Stavang's ("Stavang") (collectively "Defendants") Motion for Summary Judgment.  See Docket Item No. 62.

Pursuant to Civil Local Rule 7-1(b), the Court took the motion under submission without oral argument.  Having fully reviewed the parties' papers, the Court will grant in part and deny in part Defendants' motion for the reasons stated below.

1

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' FIRST CAUSE OF ACTION

## II. BACKGROUND

### A. Factual Background

Plaintiffs are U.S. Permanent Residents, born in China, who worked as ultrasonographers at Santa Clara Valley Medical Centers ("SCVMC") Echo-Cardiology Laboratory. Amended Complaint ("AC"), Docket Item No. 8 ¶¶ 7, 33, 37, 51. Song began working at SCVMC as an ultrasonographer in June 2001. Id. ¶ 14. Xie was hired as a full-time ultrasonographer in January 2003. Id. ¶ 42. As ultrasonographers, Defendants are members of the Service Employees International Union 715 ("Union") and their employment was governed by a Memorandum of Agreement ("MOA") signed between the Union and the County on June 19, 2006. See Pineda Decl. ¶ 4, Docket Item No. 32.

Pursuant to the MOA between the County and the Union, Plaintiffs were paid one-half of their regular base rate for each hour of on-call duty and were not eligible for four-hour minimum overtime.[1] Dkt. No. 32 ¶ 4. To record callback time, Plaintiffs swiped their badges in and out for each callback and were paid for the exact hours worked. Dkt. No. 8 ¶¶ 66, 71. In 2009, Plaintiffs' lab was transferred to a new department with a new timekeeper and new payroll department. Id. ¶ 61. In February 2009, Defendant Valencia, the timekeeper for the department, and Defendant Laborde announced a new policy regarding callback pay. Id. ¶ 61. Plaintiffs were told that they would be paid a minimum of four hours for each time they were called back, even if the task for which they were called back took less than four hours to complete. Id.; Xie Decl., Docket Item No. 41 ¶¶ 43-44. In April 2009, Plaintiffs were trained by Valencia to enter a new code when they reported for callback service, which would automatically record four hours of callback time, negating the need to swipe their badges at the exact time they entered and left the hospital because their pay was no longer based on the exact hours of callback work. Dkt. No. 8 ¶¶ 65, 72. Plaintiffs used this new code each time they were called back to the hospital and Valencia confirmed the new policy several times. Id. ¶¶ 45, 51-59.

---

[1] The MOA defines on-call duty as "the requirement to remain immediately available to report for duty to perform an essential service when assigned by the appointing authority, subject to approval by the County Executive." Dkt. No. 32 ¶ 4.

Over a year later, in October 2010, the County stopped paying Plaintiffs the minimum four hours of callback time. Dkt. No. 8 ¶¶ 67, 73. Valencia informed Plaintiffs that she had incorrectly paid them for four hours of callback time and that the County would take money back from each future paycheck for the erroneous callback time. Id. ¶ 73. On January 18, 2011, each Plaintiff received a letter notifying them of the overpayments. Id. ¶¶ 74-75. Song was notified that she had been overpaid $68,383.74 for callback time; Xie was notified that he had been overpaid $45,197.23 for callback time. Id. Plaintiffs were notified that pursuant to Section 7.6(c) of the MOA, their overpayment amount would be deducted over the same number of pay periods during which the error occurred. Id. ¶ 78. Section 7.6(c) provides: "Overpayment Errors: when a net one hundred dollars or more to be repaid in the same amount and within the same number of pay periods in which the error occurred." Dkt. No. 23-1 at 1.

In January or February 2011, Xie filed a grievance with the Union for an incorrect amount of overpayment. Dkt. No. 8 ¶ 75. Song filed a grievance in February or March 2011.[2] Id. ¶ 78. Plaintiffs claim that because they did not clock in and out at the time they arrived and left for their callback work after Valencia announced the new policy, the County could not have correctly calculated the amount of overpayment. In April 2011, the County began deducting pay from Plaintiffs' paychecks. Id. ¶¶ 75-77; Song Decl., Docket Item No. 39 ¶ 59; Dkt. No. 41 ¶ 61.

On March 25, 2011, Plaintiff Song received a letter from the County denying her grievance. Dkt. No. 8 ¶ 78. On April 11, 2011 and again on May 6, 2011, Plaintiffs met with the County's Labor Relations Representative, Pablo Pineda ("Pineda"), to discuss the overpayment. Id. ¶ 79; Davis Decl., Docket Item No. 40 ¶ 3. In the meeting, Pineda told Plaintiffs that his authority was only to set the amount to deduct from each pay period, not to change the total amount of overpayment, and for the first time he provided Plaintiffs with documentation showing how the County calculated the alleged overpayment. Dkt. No. 8 ¶¶ 79-80. Plaintiffs realized a discrepancy

---

[2] Plaintiff Xie's Declaration states that the grievance was filed on February 15, 2011, while the AC states it was filed in January 2011. Dkt. No. 41 ¶ 60. Plaintiff Song's Declaration states that the grievance was filed on February 15, 2011, while the AC states it was filed on March 25, 2011. Dkt. No. 39 ¶ 58. Pineda states that Plaintiff Xie filed a grievance on February 15, 2011 and an amended grievance on March 21, 2011 and that Plaintiff Song filed a grievance on February 15, 2011 and an amended grievance on March 21, 2011. Dkt No. 23 ¶¶ 7-8.

3
Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AS TO PLAINTIFFS' FIRST CAUSE OF ACTION

existed between the County's records and the hours they actually worked. Id. ¶ 82. In the meetings, they presented documents they had prepared on this issue to Pineda, but he refused to review or accept the documents and did not provide a process for determining an accurate accounting of the overpayment. Dkt. No. 40 ¶¶ 4-8. Plaintiffs maintain that they have provided the County and the Union with evidence showing that overtime calculations are incorrect, but have been given no opportunity to dispute the incorrect amounts. Song Decl., Docket Item No. 72 ¶¶ 27, 34, 36, 40-41, 50-51.

On May 16, 2011, Plaintiffs received a settlement agreement in which the County offered to take out a smaller amount per pay period over a longer period of time without changing the calculated overpayment. Dkt. No. 39 ¶ 8; Dkt. No. 41 ¶ 91. The agreement included clauses requiring Plaintiffs to withdraw their grievances, drop all claims against the County, and refrain from filing lawsuits. Dkt. No. 8 ¶ 86; Dkt. No. 39 ¶ 89; Dkt. No. 41 ¶ 92. Plaintiffs did not sign the agreement. Dkt. No. 8 ¶¶ 89-91.

After receiving the settlement agreement, Plaintiffs spoke with Defendant Laborde regarding the alleged miscalculations of overtime payments. Dkt. No. 41 ¶ 96. In April 2011, Laborde sent an email request to Pineda for re-evaluation of the total amount of overpayments. Dkt. No. 72 ¶ 59. On May 20, 2011, Laborde met with Director of Ambulatory Care David Wright ("Wright") regarding the overpayments. Dkt. No. 39 ¶ 98. Wright stated he would speak with Pineda's supervisor. Id.

In January 2012, the Union withdrew Plaintiffs' grievances. Dkt. No. 32 ¶¶ 7-8; Dkt. No. 32-4. The Union stated that Plaintiffs had failed to provide it with documentation to support their claims and that in light of the civil action filed in this Court, the grievances had been withdrawn. Dkt. No. 32-5.

Plaintiffs repaid the overpayments in full over 43 pay periods between May 1, 2011 and December 9, 2012. See Torrey Decl., Docket Item No. 70. None of the individual Defendants were involved in the collection of the overpaid wages from Plaintiffs. See Valencia Decl. ¶ 2, Docket Item No. 64; Laborde Decl. ¶ 2, Docket Item No. 66; Manson Decl. ¶ 2, Docket Item No.

4

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' FIRST CAUSE OF ACTION

67; Stavang Decl. ¶ 2, Docket Item No. 69.  In December 2012, Plaintiffs were put on administrative leave for pending investigations.  Dkt. No. 39 ¶ 101; Dkt. No. 41 ¶ 103.

### B.      Procedural Background

Plaintiffs filed their Complaint on September 7, 2011 and their AC on December 19, 2011. See Docket Item Nos. 1, 8.  The AC contains the following nine causes of action: (1) violation of 42 U.S.C. §1983 (violation of the Fifth and Fourteenth Amendments); (2) violation of 42 U.S.C. §1983 (violation of the First and Fourteenth Amendments through retaliation); (3) negligent misrepresentation; (4) negligent hiring, training, and retention; (5) intentional infliction of emotional distress; (6) nonpayment of wages; (7) supervisor liability; (8) public entity liability for failure to perform mandatory duties; and (9) common count services had and received.

On June 24, 2013, Defendants filed a Motion for Summary Judgment.  See Docket Item No. 29.  On November 23, 2013, the Court issued an Order granting Defendants' motion as to all causes of action except Plaintiff's First Cause of Action, as Defendants had failed to address the issue.  See Docket Item No. 46.  Defendants filed a Motion for Summary Judgment as to the First Cause of Action on December 11, 2013.  See Dkt. No. 62.  Plaintiffs filed an Opposition to Defendants' motion on December 16, 2013.  See Docket Item No. 71.

## II.     LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The court must draw all

reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. DISCUSSION

Plaintiffs assert that Defendants "took" Plaintiffs' money without due process of law and thus violated Plaintiffs' rights under the Fifth and Fourteenth Amendments. Thus, Plaintiffs assert that Defendants are liable under 42 U.S.C. § 1983.

Liability under 42 U.S.C. § 1983 requires that an "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978). A plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). Thus, to establish a claim under Section 1983, a plaintiff must prove either (1) a municipal employee "committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom," (2) "the individual who committed the constitutional tort was an official with 'final

6

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' FIRST CAUSE OF ACTION

policy-making authority,'"[3] or (3) "an official with final policy making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

To start, the Fifth Amendment only applies to federal government action, and thus is inapplicable to the present case. See Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) (citation omitted) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several states."). Thus, the Court grants summary judgment with respect to Plaintiffs' First Cause of Action as it relates to the Fifth Amendment.

Further, there is no evidence that the individually named Defendants – Manson, Valencia, Laborde, and Stavang – took wages from Plaintiffs. As such, they are entitled to summary judgment on the First Cause of Action.

As to the Fourteenth Amendment, which applies to state action, the Court will analyze Plaintiffs' claim. Plaintiffs claim that the County collected overpayments in an improper way, in incorrect amounts, without verifying the correct amounts, without reviewing evidence provided by Plaintiffs, without due process, and without the agreement of Plaintiffs. Plaintiffs claim a discrepancy between the time records kept by the County and the actual hours they worked, as a result of using the timekeeping protocol in which they were trained by Defendant Valencia. They state that in their meetings with Pineda, a County employee who acted as the Labor Relations Representative, Pineda claimed he had no authority to review the total amount requested by the County and he did not agree to recalculate the amount of overpayment. Plaintiffs allege that the County's policy of overpayment collection does not afford employees an opportunity to present evidence to dispute an alleged overpayment, which violates their right to due process.

The County has a policy to recoup overpaid wages, as outlined in the MOA between the County and Plaintiff's Union. And while this Court has previously articulated that there is nothing inherently unlawful about the recoupment of overpaid wages, there is definitely the possibility of

---

[3] "Whether a particular official has final policy-making authority is a question of state law." Gillette, 979 F.2d at 1346.

7

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' FIRST CAUSE OF ACTION

1   violation if the County, pursuant to this policy, is taking more than it actually overpaid its

2   employees.

3         Courts analyze a due process claim in two steps. They must decide (1) "whether the
4   interest asserted rises to the level of 'liberty' or 'property' protected by the Fifth and Fourteenth
5   Amendment" and, if so, (2) "what process is due." Tur v. F.A.A., 4 F.3d 766, 769 (9th Cir. 1993)
6   (citation omitted). Public employers may meet the obligation to provide due process through
7   grievance procedures established in a collective bargaining agreement, if those procedures satisfy
8   due process. Armstrong v. Meyers, 964 F.2d 948, 950 (9th Cir. 1992). Court generally consider
9   three factors to determine whether due process has been satisfied: the private interest affected by
10  the official action, the risk of erroneous deprivation of such an interest through the procedures and
11  the probable value of additional or substitute procedural safeguards, and the government's interest.
12  Mathews v. Eldridge, 424 U.S. 319, 335 (1976). The private interest affected is great, as it
13  involves Plaintiffs' earned wages and property. While in general, courts recognize that there is a
14  low risk of erroneous deprivation in grievance procedures, in this case the Court determines that
15  there is an issue of triable fact about whether the grievance procedure met the standards of due
16  process as applied to the Plaintiffs. See Armstrong, 964 F.2d at 950. Both Plaintiffs and Emma
17  Davis, the Chief Union Steward for the Union, declare that Plaintiffs were not given an opportunity
18  to be heard regarding the correct amount of overpaid wages. Finally, while the government has a
19  significant interest in collecting overpaid wages, its interest is only in collecting the correct amount
20  of overpaid wages. Plaintiffs are not asking the government not to collect overpaid wages, rather
21  only to collect those wages which were actually overpaid. As such, the Court denies summary
22  judgment on this cause of action.

23  **IV.     CONCLUSION**

24        Based on the foregoing, Defendants' Motion for Summary Judgment on Plaintiffs' First
25  Cause of Action is GRANTED in part as to claims arising from the Fifth Amendment and as to the
26  individually named Defendants and DENIED in part as to the claim arising from the Fourteenth
27  Amendment.

28

A Preliminary Pretrial Conference is scheduled for 11:00 am on October 3, 2014. The parties shall submit a Joint Preliminary Pretrial Conference Statement on September 23, 2014.

**IT IS SO ORDERED**

Dated: August 28, 2014



EDWARD J. DAVILA
United States District Judge

9

Case No. 5:11-CV-04450-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' FIRST CAUSE OF ACTION