UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HUIMIN SONG, et al.,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>　　Defendants. | Case No. 5:11-cv-04450-EJD<br><br>**ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**<br><br>Re: Dkt. No. 171 |

Plaintiffs Huimin Song ("Ms. Song") and Andy Xie ("Mr. Xie") (collectively, "Plaintiffs") filed this action under 42 U.S.C. § 1983 against Defendants County of Santa Clara (the "County"), Santa Clara Valley Medical Center ("SCVMC"), David Manson ("Mr. Manson"), Sonia Valencia Field ("Ms. Valencia Field"), Ann Laborde ("Ms. Laborde"), and Terry Stavang ("Ms. Stavang") (collectively, "Defendants") alleging violation of their due process rights under the Fourteenth Amendment. This action was tried a jury, which returned a verdict in favor of Plaintiffs.

Presently before the court is the County's Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for a New Trial. See Dkt. No. 171. Federal jurisdiction arises under 28 U.S.C. § 1331. Having carefully reviewed the parties' briefing along with oral argument presented at the hearing on this matter, the court DENIES the County's motion for the reasons explained below.

## I.   BACKGROUND

### A.   Factual Background

Plaintiffs worked as ultrasonographers in the Division of Cardiology at SCVMC, which is

1

Case No.: 5:11-cv-04450-EJD
ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

operated by the County. Ms. Song began to work at SCVMC in 2001, and Mr. Xie began in 2003. As ultrasonographers, Plaintiffs were members of the Service Employees International Union ("Union") 715 and their employment was governed by a Memorandum of Agreement ("MOA") signed between the Union and the County in 2006.

As part of Plaintiffs' job, they were required to be "on call"—they needed to carry a pager and be available to return to work after their regular shift hours. If Plaintiffs were on call and were told to return to work, that was considered a "callback." To record the number of hours worked, Plaintiffs clocked-in when they arrived to the hospital and clocked-out when they left the hospital. In February 2009, the County changed the callback procedure. The County's timekeeper, Ms. Valencia Field, told Plaintiffs that when they were called back, they would be required to clock-in when they arrived to the hospital, but would not be required to clock-out when they left. Instead, Plaintiffs would get paid for a minimum of four hours regardless of whether they worked for four hours. Once the County discovered it made an error in instituting this four-hour minimum policy, the County ended the policy in November 2010. Consequently, for the period between February 2009 and November 2010, the County believed it erroneously paid Plaintiffs an amount in excess of that authorized in the MOA.

The MOA allows the County to collect overpaid wages, as long as the wages are repaid in the same amount and in the same number of pay periods. Thus, in January 2011, the County sent Plaintiffs a letter notifying them that the County had overpaid them; according to the letter, Ms. Song owed the County $68,383.74 and Mr. Xie owed $45,197.23. After conducting their own investigation, however, Plaintiffs calculated that Ms. Song owed the County $35,326.83 in overpayment, and Mr. Xie owed $27,981.01.

Pursuant to "Step One" of the grievance process provided by the MOA, the Union assisted Plaintiffs in filing a grievance, and later an amended grievance, to dispute the County's calculation of the overpayment. In March 2011, the County responded to Plaintiffs' grievance and explained that the County's calculated overpayments would be deducted in the following way for the next 43

2

Case No.: 5:11-cv-04450-EJD
ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

to 44 pay periods: an amount of $1,554.18 would be deducted from each of Ms. Song's paycheck, and $1,051.10 from each of Mr. Xie's paycheck. In April 2011, a "Step Two" meeting took place where Ms. Song and her Union representatives met with the County's labor relations representative, Mr. Pablo Pineda ("Mr. Pineda"). At this meeting, Mr. Pineda presented Ms. Song with timecards showing the number of hours Plaintiffs worked and the County's calculations as to the overpayment. In May 2011, a second Step Two meeting took place between Plaintiffs, her Union representatives and Mr. Pineda. On the same day, the County made its first deduction of $1,628.18 from Ms. Song's paycheck, and $1,076.12 from Mr. Xie's paycheck.

### B.    Procedural History

Plaintiffs commenced the instant action against the Defendants in September 2011, asserting various claims that included the violation of constitutional rights under 42 U.S.C. § 1983, negligent misrepresentation, and intentional infliction of emotional distress. See Dkt. No. 1. After the filing of an amended complaint (see Dkt. No. 8), Defendants filed a motion for summary judgment. See Dkt. No. 29. In November 2013, the court granted in part and denied in part the Defendants' motion. As a result, only Plaintiffs' § 1983 claim for the violation of their civil rights under the Fourteenth Amendment remained. See Dkt. No. 46 at 15.

A seven-day jury trial began on January 13, 2015. On January 28, 2015, the jury returned a verdict in favor of Plaintiffs. See Dkt. Nos. 147, 148. The jury awarded Plaintiffs the following damages:

- For Ms. Song, economic damages of $33,056.91, and non-economic damages of $60,000; and
- For Mr. Xie, economic damages of $17,216.22, and non-economic damages of $40,000.[1]

Id.

---

[1] The economic damages awards were based on the amount the County owed Plaintiffs. For Ms. Song, while the County deducted $68,383.74, she believed she only owed $35,326.83, thus she overpaid the County $33,056.91. For Mr. Xie, while the County deducted $45,197.23, he believed he only owed $27,981.01, thus he overpaid the County $17,216.22.

1   A judgment in favor of Plaintiffs was entered the same day. See Dkt. No. 151.

2   In February 2015, the County filed the instant motion. See Mot., Dkt. No. 171. This

3   matter has been fully briefed, and oral argument was held on April 30, 2015. See Opp'n, Dkt. No.

4   176; Reply, Dkt. No. 178; Dkt. No. 184.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 50(b)

Pursuant to Rule 50(b):

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

"Judgment as a matter of law is appropriate when the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, which is contrary to the jury's verdict." Hagen v. City of Eugene, 736 F.3d 1251, 1256 (9th Cir. 2013). In considering the motion, "the district court considers all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party[.]" Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 762 F.3d 829, 842 (9th Cir. 2014). However, "the court may not make any credibility determinations or reweigh the evidence." Id.

### B. Federal Rule of Civil Procedure 59

Pursuant to Rule 59, the court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). The court may "invade the province of the jury only if the verdict is contrary to the clear weight of the evidence, is based upon false or pernicious evidence or to prevent a miscarriage of justice." Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1113 (9th Cir. 2012) (internal

4

Case No.: 5:11-cv-04450-EJD
ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

quotations omitted).

"Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict." Experience Hendrix L.L.C., 762 F.3d at 842. "Instead, the district court can weigh the evidence and assess the credibility of the witnesses." Id. The court can grant a Rule 59 motion "on any ground necessary to prevent a miscarriage of justice." Id.

### III.  DISCUSSION

Defendants request the court to grant the renewed motion for judgment as a matter of law because, in their view, the verdict is not supported by substantial evidence. In the alternative, Defendants request the court grant the motion for new trial because they believe the verdict is against the weight of the evidence and that the damages award is excessive. Mot. at 1. Defendants set forth three arguments: (1) Plaintiffs' evidence at trial was insufficient to prove a due process violation; (2) Plaintiffs' evidence was insufficient for the jury to impose liability on the County under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978) ("Monell"); and (3) a new trial is warranted because the damages award is excessive. Id. at 1-2. Each argument will be addressed in turn, subsequent to a discussion of this court's ability to entertain Defendants' motion.

#### A.  Jurisdiction

As a threshold matter, the parties dispute whether this court has jurisdiction to rule on the instant motion. As noted, a judgment incorporating the verdict was entered on January 28, 2015. See Dkt. No. 151. Thereafter, the County filed a timely Notice of Appeal on February 19, 2015. See Dkt. No. 167. The County subsequently filed the present motion on February 25, 2015. See Dkt. No. 171. Plaintiffs contend this court was divested of jurisdiction over this action once the County filed a Notice of Appeal, thereby precluding consideration of any subsequently filed post-trial motions. Opp'n at 2; see also Dkt. No. 190. In response, the County contends this court retains jurisdiction to entertain certain post-trial motions even after the filing of a Notice of

5

Case No.: 5:11-cv-04450-EJD
ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

Appeal. Reply at 1; see also Dkt. No. 188. Having carefully reviewed this issue, the court concludes that the County is correct.

Federal Rule of Appellate Procedure 4 provides:

> If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:
>
> (i) for judgment under Rule 50(b);
>
> (ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;
>
> (iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;
>
> (iv) to alter or amend judgment under Rule 59;
>
> (v) for a new trial under Rule 59; or
>
> (vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

Fed. R. App. P. 4(a)(4)(A). Here, there is no dispute that the County's motion was timely filed under Rule 4. Instead, the parties dispute the effect of a Notice of Appeal filed prior to the filing of a post-trial motion.

Generally, "[t]he filing of a notice of appeal divests the district court of jurisdiction." Gould v. Mut. Life Ins. Co. of N.Y., 790 F.2d 769, 772 (9th Cir. 1986). However, as it concerns the post-trial motions listed in FRAP 4(a)(4)(A), "the pendency of an appeal does not affect the district court's power to grant . . . relief." Stone v. INS, 514 U.S. 386, 401 (1995). These types of post-trial motions "render the underlying judgment nonfinal both when filed before an appeal is taken (thus tolling the time for taking an appeal), and when filed after the notice of appeal (thus divesting the *appellate* court of jurisdiction)." Id. at 402-03 (emphasis added); see Broussard v. Charvat, No. 5:13-cv-04878-LHK (N.D. Cal.), Dkt. No. 28, Order from the Ninth Circuit at 2 (holding that the district court retained jurisdiction even though a notice of appeal was filed before the post-trial motion).

6
Case No.: 5:11-cv-04450-EJD
ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

1 Here, the County's motion is pursuant to Federal Rules of Civil Procedure 50(b) and 59—
2 both of which are listed in FRAP 4(a)(4)(A). Accordingly, this court retains jurisdiction to
3 consider the present motion.

### B. Due Process Violation Claim

Having settled the jurisdictional issue, the court now proceeds to the merits of the County's motion. The County first contends that Plaintiffs failed at trial to establish they were denied due process. Mot. at 12. According to the County, Plaintiffs were afforded due process because they were provided with notice of overpayments that included the County's intent to recoup the payments, they were provided with the County's calculations of the overpayment before the first deductions were made, and they had multiple opportunities to respond to the overpayment notices before the deductions began. Id. at 10. In response, Plaintiffs argue they established a violation of due process by showing that the County alone determined and miscalculated the overpayment amounts, Plaintiffs were not provided with an accurate deduction amount until after the first deduction was made, and Plaintiffs were not afforded a genuine opportunity to dispute the overpayment amount. Opp'n at 9-11.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In a procedural due process claim, two elements must be satisfied: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998). Here, there is no dispute that Plaintiffs had a constitutionally-protected property interest in their wages. Thus, the focus of this inquiry is whether the County denied adequate procedural protections to Plaintiffs. See id. (holding that "once a court determines that a protected property interest has been taken, the question remains what process is due").

The United States Supreme Court has held that "the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." Fuentes v. Shevin,

7
Case No.: 5:11-cv-04450-EJD
ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

407 U.S. 67, 80 (1972) (internal quotations omitted). While "[t]he requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions . . . the fair process of decision making that it guarantees works, by itself, to protect against arbitrary deprivation of property." Id. at 81. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." Weinberg v. Whatcom Cnty., 241 F.3d 746, 753 (9th Cir. 2001) (emphasis in original) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). "The pre-deprivation hearing need not be extensive, merely the opportunity for informal consultation with designated personnel empowered to correct a mistaken determination." Id. (internal quotations omitted). "[W]hen a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented." Fuentes, 407 U.S. at 81.

Since the County made its first paycheck deductions on May 6, 2011, the court will evaluate the type of notice and opportunity for hearing it provided to Plaintiffs prior to May 6. See Dkt. No. 174-8, Exh. 38; Dkt. No. 174-9, Exh. 39; Tr., Dkt. No. 121 at 335. On that issue, the record shows that Plaintiffs received a letter from the County on January 18, 2011, informing them of the overpayment and the County's intent to recoup the overpayment. See Dkt. No. 172-15, Exh. 15; Dkt. No. 173-2, Exh. 17; Tr., Dkt. Nos. 121 at 251-53, 127 at 708. On March 25, 2011, Plaintiffs received a letter from the County stating the amount per paycheck that would be deducted for the next 43 to 44 pay periods. See Dkt. No. 174-5, Exh. 35; Dkt. No. 174-6, Exh. 36. At the first Step Two meeting held on April 11, 2011, Mr. Pineda gave Ms. Song the timecard the County used to calculate the overpayment. See Tr., Dkt. No. 121 at 272. When the first deduction was made on May 6, 2011, Plaintiffs learned that the deducted amount was higher than the amount the County had presented. Indeed, Ms. Valencia Field and the County's payroll manager Ms. Margaret Torrey ("Ms. Torrey") testified that a miscalculation on the overpayment amounts had been made. See Tr., Dkt. Nos. 130 at 884-86, 140 at 1036-37. This evidence supports a finding that the County failed to provide adequate notice since, as stated, the County failed to initially

provide detailed documentation of the overpayment amount and made erroneous calculations which resulted in a higher deduction amount than originally presented to Plaintiffs.

The same conclusion can be reached on the second element of due process. While Plaintiffs, through their Union, were able to file a grievance and an amended grievance, it could be found on this record that Plaintiffs were not offered an opportunity by the County to be heard in a meaningful manner. At the first Step Two meeting held in April 2011, the record shows that Ms. Song received for the first time the County's calculations as to the overpayment. Based on that fact, it could be found that the meeting did not constitute an opportunity to be heard in a meaningful manner because Ms. Song was not able to review the calculations prior to the meeting, nor was she able to use the meeting as a way to adequately discuss the calculations. Additionally, Mr. Xie was not present at the meeting. See Tr., Dkt. Nos. 121 at 270-71, 127 at 718.

At the second Step Two meeting held on May 6, 2011—which notably took place on the same date the first overpayment deduction was made and after Plaintiffs learned of the deduction—Plaintiffs, and their Union representatives, met with Mr. Pineda. Plaintiffs presented Mr. Pineda with their own calculations for the overpayment, but evidence shows that Mr. Pineda refused to listen and stated that the purpose of the meeting was to arrange a payment plan, not to discuss the overpayment amount. See Tr., Dkt. Nos. 121 at 337-38, 127 at 718-19. Indeed, Mr. Pineda admitted that he was at first reluctant to hold the second Step Two meeting because he was busy with another matter, and testified that the purpose of the meeting was to draft a settlement agreement memorializing the overpayment due according to the County's calculations. See Tr., Dkt. No. 140 at 942-43, 974-75. Moreover, it is unclear whether Mr. Pineda was the designated personnel empowered to correct a mistaken determination since he had told Plaintiffs that he had no authority to change the overpayment amount. See Tr., Dkt. No. 121 at 277-78. As such, the evidence supports a finding that the County failed to provide Plaintiffs with an opportunity to be heard.

In considering all of the evidence in the record and drawing all reasonable inferences in

9
Case No.: 5:11-cv-04450-EJD
ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

Plaintiffs' favor, judgment for Defendants would be inappropriate because the evidence supports the jury's verdict that the County violated Plaintiffs' due process rights. Accordingly, the County's motion for judgment as a matter of law as to this issue is denied.[2]

### C. Monell Liability

The County contends that even if Plaintiffs could establish a due process violation claim, they failed to present evidence supporting Monell liability against the County. Mot. at 13. The County argues the evidence at trial was insufficient to establish that the County had a policy or longstanding practice of permitting the recoupment of funds without due process, that there was no evidence showing that a final policymaker's decision caused the due process violation, and that there was no evidence showing that a final policymaker ratified the actions of a subordinate employee who violated due process. Id. at 14, 17, 19. In response, Plaintiffs argue they did establish Monell liability because they showed the County had an official policy of recouping the overpayments without providing due process, Mr. Pineda was the final policymaker whose decisions denied Plaintiffs with due process, and Ms. Torrey was the final policymaker who ratified Mr. Pineda's actions that violated Plaintiffs' due process. Opp'n at 18-20.

Under Monell, a local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible[.]" Monell, 436 U.S. at 694. There are three ways to satisfy the requirement for municipal liability:

> (1) the plaintiff may prove that a public entity employee committed the alleged constitutional violation pursuant to a formal policy or a

---

[2] The County also argues that Plaintiffs waived their due process claim because they abandoned the grievance process. Mot. at 11-12. However, as Plaintiffs point out, the County did not raise the argument concerning waiver of due process in their Rule 50(a) motion. Opp'n at 12; see Dkt. No. 128 at 5-6. Thus, the court declines to consider this argument. See Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n. 5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury.").

10
Case No.: 5:11-cv-04450-EJD
ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

> longstanding practice or custom, which constitutes the standard operating procedure of the local government entity; (2) the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy; or (3) the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action.

Avalos v. Baca, 596 F.3d 583, 587-88 (9th Cir. 2010). In addition, "[w]hether a particular official has final policy-making authority is a question of state law." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).

Plaintiffs' theorized the County violated their right to due process pursuant to a formal policy of deducting the overpayment from Plaintiffs' paychecks without an opportunity to contest the amount deducted. Opp'n at 18. The record shows the County has a policy to collect overpaid wages from employees pursuant to the MOA, and that Mr. Pineda had the authority, under the MOA, to approve the deduction of overpayments from Plaintiffs' paychecks. See Tr., Dkt. No. 140 at 954, 956-57. The record also supports Plaintiffs' contention that it was the County's policy to make its own calculations regarding the overpayment, notify Plaintiffs of the overpayment and the County's intent to recoup the overpayment, decide to deduct the overpayment from Plaintiffs' paychecks, and then not provide Plaintiffs with an opportunity to contest the overpayment amounts. See Tr., Dkt. Nos. 130 at 896-97 (Ms. Torrey testified she had no knowledge of a written policy establishing the mechanism by which an employee can contest the overpayment amount), 140 at 958-59 (Mr. Pineda testified that Ms. Valencia Field and Ms. Torrey made the calculations); see also supra at § III(B). Based on this evidence, the court concludes Plaintiffs provided sufficient evidence to support its theory of Monell liability based on the existence of a formal policy. As such, it is unnecessary to discuss the other two ways in which Monell liability can be established.

In considering all the evidence in the record and drawing all reasonable inferences in Plaintiffs' favor, judgment for the County would be inappropriate as the evidence supports the jury's verdict on the issue of Monell liability. Therefore, the County's motion for judgment as a

matter of law is denied.

### D. Damages Award

The County's final argument is that it is entitled to a new trial because the evidence presented to the jury does not support the damages award, which grossly exceeds any due process violation proven at trial. Mot. at 20. The County argues that Plaintiffs' economic damages ($33,056.91 for Ms. Song, and $17,216.22 for Mr. Xie) vastly overcompensates them for the economic harm they suffered from the first deduction ($1,628.18 for Ms. Song, and $1,076.12 for Mr. Xie). Id. at 20-21. The County further argues that Plaintiffs' non-economic damages ($60,000 for Ms. Song, and $40,000 for Mr. Xie) are excessive to the mental and emotional damages Plaintiffs could have suffered for due process deprivation lasting between the time the County began to deduct overpayments to when Plaintiffs were later given an opportunity to respond. Id. at 21. In response, Plaintiffs argue that they offered sufficient evidence to support these damages awards. Opp'n at 20.

"The purpose of awarding damages in a [S]ection 1983 case is to compensate the aggrieved party." Brady v. Gebbie, 859 F.2d 1543, 1557 (9th Cir. 1988). "The compensable damages are those actually caused by the denial of procedural due process," which "include damages for mental and emotional distress." Id.

While the County claims that Ms. Song's deprivation was of $1,628.18 and Mr. Xie's was of $1,076.12 due to the first paycheck deduction, the evidence at trial showed that Ms. Song's deprivation amounted to $68,383.74 and Mr. Xie's to $45,197.23—the total amount deducted from Plaintiffs' paychecks. See Tr., Dkt. No. 121 at 370. The economic damages the jury awarded is the difference between the amount deducted from Plaintiffs' paychecks and the amount Plaintiffs believed they actually owed the County. For Ms. Song, the County deducted $68,383.74, but according to her own calculations, she only owed $35,326.83; thus, she overpaid the County $33,056.91—the precise amount the jury awarded Ms. Song in economic damages. See id. For Mr. Xie, the County deducted $45,197.23, but according to his own calculations, he

United States District Court
Northern District of California

only owed $27,981.01; thus, he overpaid the County $17,216.22—also the precise amount the jury awarded Mr. Xie in economic damages. See id. The mathematical precision in the award of economic damages shows that the jury made their own reasonable judgment based on the evidence. See In re Exxon Valdez, 270 F.3d 1215, 1248 (9th Cir. 2001) ("Reasonable jurors need not accept the views of one side's expert or the other's, but may make their own reasonable judgment on the evidence, accepting part, all, or none of any witness's testimony.").

Furthermore, as to non-economic damages, the evidence showed that Plaintiffs suffered from high blood pressure, anxiety, depression, pain, and insomnia as a result of the paycheck deductions. See Tr., Dkt. Nos. 121 at 291-92, 126 at 412-13, 127 at 735-36. While Plaintiffs presented in their closing argument that they should be awarded at least $300,000 each, the jury's substantial reduction demonstrates that they used their own reasonable judgment in evaluating the evidence and quantifying Plaintiffs' emotional distress. See Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 95 F.3d 1422, 1435 (9th Cir. 1996) (noting that "substantial deference [is given] to a jury's finding of the appropriate amount of damages . . . unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork"). Considering the evidence, the damages award is not excessive.

A review of the relevant record reveals that the jury's verdict is neither contrary to the clear weight of the evidence nor based upon false or pernicious evidence. Accordingly, the County's motion for a new trial is denied.

## IV. CONCLUSION

Based on the foregoing, Defendants' Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for a New Trial is DENIED.

**IT IS SO ORDERED.**

Dated: December 15, 2015



EDWARD J. DAVILA
United States District Judge

13
Case No.: 5:11-cv-04450-EJD
ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL